**David SCHUDEL, Plaintiff,**

**and**

**Merlin E. Carlson, Jr., Plaintiff—
Appellant,**

**v.**

**GENERAL ELECTRIC CO., a foreign corporation; Kaiser Aluminum Corporation, a foreign corporation, Defendants—Appellees.**

**David Schudel; Daniel Glass; Timothy L. Schudel, Husband and the marital community composed thereof; Sandra Schudel, Wife and the marital community composed thereof; Craig A. Thompson; Deborah Guaragna, Plaintiffs—Appellants,**

**v.**

**General Electric Co.; Kaiser Aluminum Corporation, Defendants—Appellees.**

**No. 99-36089.**

**D.C. No. CV-92-00081-AAM.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 2001.

Decided May 10, 2002.

respiratory injury received at the trial.

Before KOZINSKI and GOULD, Circuit Judges, and SCHWARZER,* Senior District Judge.

## MEMORANDUM **

David Schudel, Timothy Schudel, Sandra Schudel, Daniel Glass and Craig Thomp-

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

**486**

son (collectively called "the Schudels") appeal from the dismissal of their claims. Deborah Guaragna–Williams ("Williams") appeals asking us to reinstate the original jury verdict in her favor.

## Background

This diversity case involves claims for damages from negligence and loss of consortium against defendants General Electric Company ("General Electric") and Kaiser Aluminum and Chemical Corporation ("Kaiser"). Kaiser contracted with General Electric to clean up solvents at Kaiser's Trentwood facility. All of the plaintiffs except one were employed by General Electric on the cleanup.[1] These plaintiffs alleged they developed various neurological and respiratory problems from exposure to two of the solvents.

The jury returned verdicts for the plaintiffs. The defendants moved for judgment as a matter of law ("JNOV") or in the alternative a new trial. The district court granted JNOV with respect to all claims asserted by the Schudels. The court affirmed the verdict in favor of Williams.[2]

Defendants appealed the verdict in favor of Williams. The Schudel plaintiffs appealed the granting of the motion for JNOV. We reversed in part the judgments with respect to Williams and the Schudel plaintiffs. *Schudel v. General Electric Co.,* 120 F.3d 991 (9th Cir.1997).

We held that the expert testimony that Williams presented of Drs. Morton, Goldstein and Lantsberger was *Daubert*-deficient and should not have been admitted. Although we found all of Williams' expert neurological testimony inadmissible, we recognized that Williams had submitted other expert causation testimony concerning her claimed respiratory injury. We concluded that the district court had properly denied defendants' JNOV motion. We held that the admission of the neurological testimony was prejudicial, vacated Williams' verdict, and remanded for a new trial.

We also held that the expert causation testimony of Dr. Lantsberger presented by the Schudel plaintiffs should have been excluded because the "whole person aggravation" theory of causation was *Daubert*-deficient. Because Dr. Lantsberger's improperly admitted testimony was the only evidence of causation, we concluded that its erroneous admission was prejudicial and remanded for a new trial.

On remand, defendants made an unopposed motion requesting that the district court conduct an inquiry prior to retrial of the remaining claims to determine whether the Schudel plaintiffs or Williams could present evidence of causation that would survive the standards articulated in our *Schudel* opinion. The district court granted defendants' motion and issued an Order to Show Cause directing the Schudel plaintiffs to file a written response "showing that if the causation testimony of Dr. Lantsberger had been excluded prior to the close of trial, they would have presented then available and admissible evidence sufficient to withstand a directed verdict." The Order similarly directed Williams to show "what then available and admissible causation evidence she would have presented at trial to withstand a directed verdict if the neurological injury causation evidence found legally sufficient by the circuit had been excluded from said trial."

---

1. Sandra Schudel did not work at the site, but asserted a loss of consortium claim as the wife of plaintiff Tim Schudel.

2. This memorandum disposition only discusses the Schudel plaintiffs' and the Williams' appeals. Plaintiff Carlson's appeal is the subject of a separate memorandum disposition.

In response, the Schudels and Williams submitted affidavits from Drs. Morton, Goldstein and Lantsberger and from two newly retained experts, Drs. Kay Kilburn and Geoffrey Kelafant. Following a March 2, 1999, hearing at which the district court repeatedly pressed the Schudels and Williams to identify what new opinions they could offer that were materially different from those we had previously held inadmissible, the district court concluded that they had provided no such evidence. Instead, the district court found that their submissions did no more than attempt to resurrect the "theories and evidence which were before the circuit and which the circuit found scientifically unreliable or irrelevant to the causation inquiry." The claims of the Schudel plaintiffs were dismissed in their entirety, and the neurological component of Williams' negligence claim was also stricken.

This appeal followed.

### The Schudel Plaintiffs

 The Schudels claim that the district court erred by dismissing their claims without retrial.[3] A district court has broad discretion to limit the issues to be tried, evidence to be used, and the witnesses and experts who can be produced at trial, including discretion on remand to limit the parties at retrial to the *same* evidence and witnesses presented at the first trial. *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449–50 (10th Cir.

1993); *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2803 (2d ed.1995). Here, the district court did not prohibit the Schudel plaintiffs from introducing new evidence to support their remaining claims. The district court's Order to Show Cause was intended to address the concern that led us previously to order a new trial—that, had the unscientific Lantsberger testimony been timely excluded at trial, the Schudel plaintiffs might have been able to supply other evidence to fill that critical gap. The district court gave the Schudel plaintiffs a fair chance to demonstrate that they were able to fill that gap. They failed to do so.

The Schudel plaintiffs argue that the district court's show cause order violated Rule 50, citing *Schudel* and *Elbert v. Howmedica, Inc.*, 143 F.3d 1208 (9th Cir. 1998) *cert. denied*, 525 U.S. 944, 119 S.Ct. 366, 142 L.Ed.2d 302 (1998). We reject this argument. First, unlike in *Elbert*, the district court here did not purport to order relief under Rule 50(b). Second, unlike the plaintiff in *Elbert*, the Schudel plaintiffs were allowed to offer new evidence on remand. It was only after they were unable to show that they had any scientifically reliable expert causation evidence to support their claims that the district court determined that a new trial was unwarranted. Through the show cause proceeding, to which no plaintiff objected, the Schudel plaintiffs were given the opportu-

---

**3.** Defendants argue that the appeal is moot because had *Weisgram v. Marley Company*, 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000), been decided when the original appeal came before us, we would not have remanded the case and would have upheld the original trial court decision granting JNOV against all of the Schudel plaintiffs' claims. First, it is not clear from the record that the previous panel remanded for a new trial because it felt that it had no other choice under the law, or because the previous panel

felt that the remaining admissible evidence was potentially strong enough to withstand a directed verdict. Furthermore, while it is our duty to decide this appeal in accordance with the law, we cannot reinstate an original judgment that was rendered a nullity by the prior decision of this court. *Richardson v. United States*, 841 F.2d 993, 998 n. 9 (9th Cir.1988), *as amended by* 860 F.2d 357 (9th Cir.1988). Consequently, *Weisgram* does not moot this appeal and we must decide this appeal on the merits.

nity that the *Elbert* plaintiff was denied—a fair chance to remedy their inability to rely on the expert testimony they presented at the first trial by supplementing that testimony with new evidence. This procedure was within the district court's discretion.

■ At the conclusion of the show cause proceeding, the district court found that the Schudel plaintiffs had failed to proffer any new expert causation testimony that met the *Daubert* standard applied in *Schudel*. That decision must be reviewed under a deferential abuse of discretion standard. *See Daubert v. Merrell Dow Pharms., Inc. ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir.1995); *see also McKendall v. Crown Control Corp.*, 122 F.3d 803, 805 (9th Cir.1997). That exclusion of the expert testimony was "outcome determinative" does not make that decision subject to a more stringent standard of review. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

In the show cause proceeding, the Schudel plaintiffs relied upon the opinions of three experts who testified at the original trial—Drs. Morton, Goldstein, and Lantsberger—and two who were not designated as trial experts and, therefore, did not testify at the trial—Drs. Kilburn and Kelafant. The district court did not abuse its discretion in determining that none of this evidence was materially different from the causation opinions rejected in *Schudel* and therefore inadmissible.

The only difference between the trial testimony and the testimony at the show cause hearing was a variation in the testimony of Dr. Lantsberger. At the show cause hearing, Dr. Lantsberger asserted that, rather than the toxins merely being "related to" the injuries as she had stated at the previous trial, the toxins "more probably than not" caused the injuries. Despite addition of this phrase, Dr. Lants-

berger's statements did not constitute new evidence, but only a new conclusion based on old evidence. The district court properly found it unreliable.

We encountered a similar situation in *Daubert II*. There, in deciding not to remand for a new trial and not to allow the experts to restate their conclusions more forcefully, we stated:

> Any such tailoring of the experts' conclusions would, at this stage of the proceedings, fatally undermine any attempt to show that these findings were "derived by the scientific method." Plaintiff's experts must, therefore, stand by the conclusions they originally proffered, rendering their testimony inadmissible under the second prong of Fed.R.Evid. 702.

*Daubert II*, 43 F.3d at 1322. *Daubert II*, though presented in a different procedural setting, is persuasive by analogy. The district court did not abuse its discretion in discounting Dr. Lantsberger's unreliable testimony.

In summary, we hold that the district court did not abuse its discretion in finding the Schudel plaintiffs' proffered expert testimony inadmissible. Because no expert causation evidence remained, judgment in favor of defendants was proper.

### Plaintiff Williams

■ When this case was last before us, we ruled that the testimony about Williams' neurological injury was *Daubert*-deficient and ordered a new trial on her pulmonary injuries. Williams claims that the testimony on her pulmonary injuries alone should uphold the jury verdict, and that this precise argument was not presented in the first appeal.

Williams' argument fails. Williams could have argued this when she first appealed, but she did not do so. However,

she did assert this argument in her petition for rehearing and her petition to the Supreme Court for writ of certiorari. We conclude that this issue has already been decided against Williams and we decline to reconsider it here. "[U]nder the 'law of the case' doctrine one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Kimball v. Callahan,* 590 F.2d 768, 771 (9th Cir.1979), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33.

Although we reject Williams' appeal, we recognize that Williams has not proceeded in bad faith and we deny defendants' request for sanctions.

### Conclusion

We affirm the district court's dismissal of the Schudel plaintiffs' claims. We affirm our previous holding setting aside the jury verdict in favor of plaintiff Williams. We deny defendants' request for sanctions against Williams.

**AFFIRMED.**