v. *Kaluna,* slip op. at 8307, 152 F.3d 1069 (9th Cir.1998), is withdrawn.

Charlotte KENNEDY and Robert Kennedy, Plaintiffs–Appellants,

v.

COLLAGEN CORPORATION, Defendant–Appellee.

No. 97–16945.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 12, 1998.*

Decided Dec. 7, 1998.

Michael M. Essmyer, Essmyer & Hanby, Houston, TX, for plaintiffs-appellants.

Frederick D. Baker, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for defendant-appellee.

---

* The panel unanimously finds this case suitable for decision without oral argument.  Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Before: FERGUSON, REINHARDT, and THOMPSON, Circuit Judges.

FERGUSON, Circuit Judge:

Charlotte and Robert Kennedy brought an action in the district court in 1988 against the Collagen Corporation and its employees for alleged injuries sustained by Mrs. Kennedy following injections with Collagen's medical product, Zyderm. Zyderm is a substance made from the skin, tendons, and connective tissue of bovine animals. A doctor injects Zyderm into facial wrinkles for a smoother appearance. Mrs. Kennedy claims that she developed atypical systemic lupus erythematosus (SLE), a debilitating and incurable autoimmune disease, as a result of the Zyderm injections. Plaintiffs' litigation pleads common law causes of action for negligence, strict liability, breach of express and implied warranty, battery, and conspiracy.

This is the third time this case has been before us after a grant of summary judgment for the defendant. Most recently, we reversed the district court's determination that federal law preempted the state common law causes of action. *Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir.1995). In 1992, we also reversed the district court's grant of summary judgment for the defendant and remanded the case. *Kennedy v. Collagen Corp.*, 974 F.2d 1342 (table), 1992 WL 217803 (9th Cir.1992). The district court had concluded that the affidavit of Dr. Joseph Spindler, who is plaintiffs' expert witness, was insufficient to create a genuine issue of material fact as to whether Zyderm caused Mrs. Kennedy's injuries. The district court determined that the Spindler affidavit raised only a temporal relationship between the injections of Zyderm and Mrs. Kennedy's injuries, that is, that the injuries occurred soon after the injections. This court initially affirmed the grant of summary judgment by the district court. After due consideration of a petition for rehearing, however, we deter-

mined that Dr. Spindler based his opinion on other factors in addition to the temporal relationship, and, accordingly, we granted the petition for rehearing, reversed the grant of summary judgment and remanded.

In the meantime, the Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which held that the *Frye* standard of "general acceptance within the scientific community," under which we had reviewed Dr. Spindler's affidavit, was superseded by Federal Rule of Evidence 702. In April of 1997, Collagen Corporation filed their third motion for summary judgment, alleging that the Kennedy's expert testimony as to causation was inadmissible under *Daubert*. The district court reviewed Dr. Spindler's affidavit under *Daubert*, found it inadmissible, and once again granted summary judgment to the defendant. This issue is now before us on appeal.

■ We review the district court's decision to exclude expert scientific testimony for abuse of discretion, even in the context of a summary judgment motion. *See General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). We conclude that the district court improperly applied the *Daubert* test, because it failed to consider relevant scientific evidence relied on by the plaintiffs' expert witness, Dr. Spindler, to support his conclusion.[1] Thus, the court abused its discretion in excluding his testimony. We hold that, because plaintiffs adduced enough admissible evidence to create a genuine issue of material fact as to whether Zyderm caused Mrs. Kennedy's atypical SLE, the district court erred in granting summary judgment to defendant.

*Discussion*

I. *Daubert*

■ Daubert established that, faced with a proffer of expert scientific testimony, the tri-

---

1. Plaintiffs argue that because Dr. Spindler is a medical expert, rather than a scientific expert, *Daubert*'s requirement of scientific validity is not applicable here. This court, after *Daubert*, has held that a medical doctor's testimony regarding the cause of an injury may be based on experience and review of medical records only. *See Sementilli v. Trinidad Corp.*, No. 96–16034, slip op. 12865, 12879 (9th Cir. filed Sept. 16, 1998)

(as amended Nov. 12, 1998) (per curiam). However, in this case, involving the injection of a substance by a medical doctor for medical reasons, we will follow the uniform practice among courts in judging the admission of clinical medical testimony by the *Daubert* standard. *See, e.g., Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir.1998) (en banc).

al judge, in making the initial determination whether to admit the evidence, must determine whether the expert's testimony reflects (1) "scientific knowledge," and (2) will assist the trier of fact to understand or determine a material fact at issue. 509 U.S. at 592, 113 S.Ct. 2786. This requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786. The Court stated that many factors will bear on this inquiry. For example, a judge may consider whether the theory has been subjected to peer review and publication, although in some instances well-grounded but innovative theories will not have been published, and, thus, should not be excluded on this basis alone. *Id.* at 593, 113 S.Ct. 2786. The Court emphasized that the focus of the inquiry envisioned by Rule 702 must be on the principles and methodology underlying an expert's testimony, not on the conclusions. *Id.* at 506, 113 S.Ct. 2786. The Court later refined this language, explaining that a district judge may reject expert testimony where the "analytical gap" between the data and the expert's conclusion is too great. *Joiner,* 522 U.S. 136, 118 S.Ct. at 519.

When the Supreme Court remanded *Daubert* to this court, we added that, where the proffered testimony is not based on independent research, in order to be admissible as "scientific knowledge," it must be supported by "objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1318 (9th Cir.1995).

## II. Scientific Knowledge

■ Dr. Spindler relied upon a wide variety of objective, verifiable evidence in forming his opinion that Zyderm causes autoimmune disorders such as atypical SLE: (1) peer-reviewed articles; (2) clinical trials and product studies conducted by the defendant; (3) the Texas Department of Health's investigation; (4) his examination of Mrs. Kennedy; (5) Mrs. Kennedy's medical history; (6) Mrs. Kennedy's medical laboratory tests; and (7)

Mrs. Kennedy's medical reports.[2] The district court, in rejecting Dr. Spindler's testimony, determined that the testimony was not based on scientific reasoning, because it focused on the lack of specific studies proving Zyderm causes lupus, and the absence of consensus in the medical community on this point. In doing so, however, the district court ignored the scientific studies relied upon by Dr. Spindler that reinforce the validity of the *methodology* Dr. Spindler relied upon in reaching his conclusion. Ultimately, the trial court failed to distinguish between the threshold question of admissibility of expert testimony and the persuasive weight to be accorded such testimony by a jury.

Dr. Spindler used the traditional scientific methodology of a clinical medical expert in providing his opinion that Zyderm causes autoimmune disorders, such as atypical SLE. In particular, he relied on the finding, established in both peer-reviewed publications and clinical studies, that Zyderm induces the body to produce the same autoimmune antibodies that are the hallmark of autoimmune diseases like SLE. An independent study by researchers in San Diego concluded that bovine collagen—Zyderm's active ingredient—can induce autoantibodies. Dr. Spindler co-authored a peer-reviewed publication describing a scientific relationship between Zyderm collagen injections and the development of autoimmune reactions and autoantibodies. These reactions accompany autoimmune diseases known as dermatomyositis and polymyositis-like syndrome. A scientist for defendant Collagen, Dr. Frank DeLustro, validated Dr. Spindler's methodology. Furthermore, Collagen Corporation's own clinical trials reveal that numerous patients develop autoantibody reactions following bovine collagen injections. Finally, the Texas Department of Health investigated collagen injections in about 40 reported cases of autoimmune reactions from the product, and found varying temporal relationships between collagen injections and the onset of autoimmune diseases.

In addition to these scientific and clinical studies of the connection between collagen

---

**2.** We note, as a preliminary matter, that the parties do not dispute that Dr. Spindler, who is a

rheumatologist, is an expert in lupus, autoimmune diseases, and immunological conditions.

and autoimmune disorders, Dr. Kennedy's opinion relied on a physical examination of Mrs. Kennedy and a review of her extensive medical history and records, including laboratory tests. Mrs. Kennedy's history and medical records reveal that, prior to the injections of defendant's collagen product, she was free of lupus or any other autoimmune disease. After the third injection of Zyderm, Mrs. Kennedy suffered a severe adverse reaction and was diagnosed as having an atypical form of SLE.[3] Mrs. Kennedy's body produced autoantibodies following her injections with Zyderm, such as those produced by patients suffering from lupus. Physicians recognize lupus as an incurable autoimmune disease set off when something goes wrong with the body's immune system and antibodies that normally fight germs begin to attack healthy tissue. Mrs. Kennedy also produced elevated levels of antihistone antibodies, which are commonly found in patients with a condition known as "drug-induced lupus," a disease accepted in the medical community, in which lupus-type symptoms develop after exposure to certain medications.

It is understandable why litigants and judges could be skeptical about Dr. Spindler's conclusion. Collagen has been classified by the Food and Drug Administration as a medical device, rather than a drug. The typical medical devices are inert objects such as pacemakers, heart valves and replacement inserts. The substances comprising such devices are not absorbed or metabolized by a person's body. To claim that such inert objects may cause lupus surely would be "junk science." Even the Kennedys recognize that if parts of collagen are not metabolized, then collagen likely is not the cause of Mrs. Kennedy's injuries. Their complaint alleges that collagen is a drug, chemical, or compound.

The evidence before us reasonably demonstrates that collagen is not like metal or plastics or other objects usually labeled medical devices. After examining defendant's literature and laboratory tests, Dr. Spindler contends that collagen should be classified as a drug because it is absorbed by the body. The body breaks down the collagen fibers into amino acids, which are then metabolized

into the body. The Texas Department of Health agrees that Zyderm could have been classified as a drug since it achieves its intended purpose through a chemical reaction. Furthermore, the defendant ran laboratory tests that showed such a reaction, as have other researchers, who have concluded that, after multiple injections, collagen can induce autoantibodies. Thus, the analogy between "drug-induced lupus" and collagen-induced lupus is a close one. It is from this foundation that Dr. Spindler seeks to testify.

The district court, in rejecting Dr. Spindler's testimony, emphasized that no epidemiological or animal studies link Zyderm to SLE or atypical SLE. Other circuits, however, have found that it is scientifically permissible to reach a conclusion on causation without these types of studies. *See, e.g., Benedi v. McNeil–P.P.C., Inc.,* 66 F.3d 1378, 1384 (4th Cir.1995) (finding, under *Daubert,* that expert testimony need not be based on epidemiological data or identical case studies to prove causation). Here, Dr. Spindler explained that epidemiological studies linking an increased incidence of SLE to patients injected with collagen would be almost impossible to perform because patients who have collagen injections normally do not seek treatment from rheumatologists for their reactions. Patients who have collagen injections usually consult the injecting doctor when any subsequent problems arise. Because the injecting doctor typically is a plastic surgeon or dermatologist, he is not trained to recognize autoimmune or immune disorders. Thus, the causal connection goes unrecognized.

Other circuits have allowed clinical medical experts to testify to an opinion on causation as long as it is based on methods reasonably relied on by experts in their field. *See, e.g., Zuchowicz v. United States,* 140 F.3d 381, 387 (2d Cir.1998) (accepting the district court's conclusion that plaintiff's experts based their opinions on such methods). Here, based on his knowledge of the connection between collagen and various autoimmune disorders, combined with his observa-

---

**3.** Physicians identify "atypical SLE" when a patient does not meet all of the criteria required for an official diagnosis of SLE.

tion of Mrs. Kennedy's injuries and her medical history and laboratory tests, Dr. Spindler concluded that Zyderm, a collagen product, had caused Mrs. Kennedy's particular auto-immune disorder, atypical SLE. The fact that a cause-effect relationship between Zyderm and lupus in particular has not been conclusively established does not render Dr. Spindler's testimony inadmissible. *See Ambrosini v. Labarraque,* 101 F.3d 129, 139 (D.C.Cir.1996), *cert. dismissed, Upjohn Co. v. Ambrosini,* —— U.S. ——, 117 S.Ct. 1572, 137 L.Ed.2d 716 (1997)(reversing district court's finding that expert testimony was inadmissible because none of the studies relied upon specifically concluded that Depo–Provera caused the type of birth defects suffered by the plaintiff). Dr. Spindler set forth the steps he took in arriving at his conclusion in his deposition. Dr. Spindler's analogical reasoning was based on objective, verifiable evidence and scientific methodology of the kind traditionally used by rheumatologists. This is precisely what *Daubert* requires. *See, e.g., Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1125 (9th Cir.1994) (finding admissible expert testimony of a rheumatologist based on medical records, his clinical experience, preliminary results of an epidemiological study and medical literature). We note also that defendant Collagen has not introduced any evidence that Dr. Spindler's reasoning is not scientifically valid. *See Ambrosini,* 101 F.3d at 139 (noting that lack of contradictory evidence supported admissibility of expert's opinion regarding causation).

Although the district court properly may exclude expert testimony if the court concludes too great an analytical gap exists between the existing data and the expert's conclusion, here the gap was of the district court's making. The court did not consider all of the data relied upon by Dr. Spindler, namely, studies by the defendant and others finding that Zyderm can induce autoimmune reactions. Consequently, the court abused its discretion in concluding that Dr. Spindler's testimony failed to meet *Daubert's* scientific knowledge requirement.

### III. Assisting the Trier of Fact

■ The second requirement of Rule 702 under *Daubert* is that the expert testimony must assist the trier of fact. The crucial issue in this case is causation. As we noted in our unpublished opinion in this case, California law provides the substantive standard governing proof of causation in personal injury cases. *Kennedy,* 1992 WL 217803, at *1. The Kennedys must prove causation "within a reasonable medical probability based upon competent expert testimony." *Jones v. Ortho Pharmaceutical Corp.,* 163 Cal.App.3d 396, 402, 209 Cal.Rptr. 456 (1985).

The *Daubert* opinions emphasize that causation need not be established to a high degree of certainty for expert testimony to be admissible under Rule 702. The Supreme Court stressed that, "[i]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. On remand, we stated: "Not knowing the mechanism whereby a particular agent causes a particular effect is not always fatal to a plaintiff's claim. Causation can be proved even when we don't know precisely *how* the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage *somehow.*" *Daubert,* 43 F.3d at 1314.

■ Dr. Spindler's proffered testimony clearly meets the requirement, as Dr. Spindler was prepared to testify that based on "reasonable medical probability" Zyderm caused Mrs. Kennedy's immunological injuries.

### IV. Conclusion

Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony. In arriving at a conclusion, the factfinder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should

not preclude the admission of the expert's testimony—they go to the *weight,* not the admissibility. As one court has summarized:

Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.

*McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir.1995).

We conclude that the district court failed to consider all of the reasoning or methodology relied on by Dr. Spindler in linking Zyderm to Mrs. Kennedy's illness and, thus, erred in finding that Dr. Spindler's testimony was not supported by scientific evidence. Because Dr. Spindler's testimony is supported by scientific evidence and will assist the trier of fact, we hold that, his testimony is admissible under Rule 702. Thus, reviewing the defendant's summary judgment motion de novo, we reverse the district court's grant of summary judgment in favor of defendant. The district court at trial must admit the testimony and evidence of Dr. Spindler.

REVERSED and REMANDED.