Opinion of December 5, 2002 Withdrawn, Affirmed and Corrected Opinion
filed December 12, 2002















Opinion of December 5, 2002 Withdrawn, Affirmed and Corrected Opinion filed December 12, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00734-CV

_______________

 

RACHAEL
PRAYTOR, Appellant

 

V.

 

FORD MOTOR COMPANY AND CHARLIE THOMAS FORD, INC., Appellees

_______________________________________________

 

On Appeal from
the 11th District Court

Harris County, Texas

Trial Court
Cause No. 99-64037

_______________________________________________

 

C O R R E C T E D   O P I N
I O N

            Rachael Praytor
appeals a judgment in favor of Ford Motor Company on the ground that she
presented sufficient evidence of causation to defeat summary judgment.  We affirm.

Factual
Background

            Praytor
was involved in an automobile accident in which the air bag in her Ford Probe
deployed.  Some time after the accident,
she began to suffer from sinusitis and asthma. 









            Praytor filed suit
against Ford Motor Company and Charlie Thomas Ford[1] alleging
the sinusitis and asthma were caused by exposure to chemicals released when the
air bag deployed.  Ford filed a
no-evidence motion for summary judgment on the ground that Praytor
had not produced evidence of causation.  Praytor responded by attaching the affidavits of her
experts, Dr. Alex Lechin, and Byron Bloch.  Ford objected to Praytor’s
affidavits contending the experts did not meet the requirements of Rule 702 of
the Texas Rules of Evidence.  Neither
party requested a Robinson-Daubert hearing prior to the trial court’s ruling on
the motion for summary judgment.  The
trial court granted summary judgment in favor of Ford stating, “Plaintiff has
not produced legally competent evidence regarding causation, an essential
element of her case.”

Standard of
Review

            The “no-evidence” motion for summary
judgment shifts the burden of proof to the non-movant
to produce evidence raising a genuine issue of material fact on the contested
issue on which the non-movant would bear the burden
of proof at trial.  See Tex. R. Civ. P. 166a(i).  In this motion, a party asserts there is no
evidence of one or more essential elements of claims upon which the opposing
party would have the burden of proof at trial. 
Lake Charles Harbor and Terminal
Dist. v. Bd. of Trs. of Galveston Wharves, 62
S.W.3d 237, 241 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).  Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the
burden of establishing a right to judgment by proving each claim or
defense.  Id.  To defeat a
“no-evidence” summary judgment motion, the non-movant
need not marshal its proof but should only identify more than a scintilla of
evidence raising a fact issue on the challenged elements.  See Tex. R. Civ. P.
166(i) cmt.  

            Summary judgment is appropriate if
the only evidence offered to prove an essential element of the claim cannot be
given weight by the court.  W. Wendell Hall, Standards of Review in Texas, 29 St. Mary’s L. 351, 419 (1988). The non-movant may not rely on evidence that is barred from
consideration by rules of law or evidence, or that amounts to no more than a scintilla.  Id.  A non-movant
presents less than a scintilla of evidence when that which is proffered is “so
weak as to do no more than create a mere surmise or suspicion” — the effect
being that there is no evidence offered. 
Hight v. Dublin Veterinary Clinic, 22 S.W.3d
614, 619 (Tex. App.—Eastland 2000, pet. denied). 

Necessity
of Expert Testimony

            Praytor
claims the facts established by her summary judgment evidence were sufficient
to raise a fact question on causation for several reasons.  First, Praytor contends
that rule 702 does not apply because lay testimony is adequate to prove
causation.  To establish causation, a
plaintiff must prove the defendant’s conduct caused an event and that event
caused the plaintiff to suffer compensable damages.  Burroughs
Wellcome Co. v. Crye,
970 S.W.2d 497, 499 (Tex.
1995).  The causal link between the event
sued upon and the plaintiff’s injuries must be shown by competent
evidence.  Morgan v. Compugraphic Corp., 675 S.W.2d
729, 731 (Tex.
1984).  Lay testimony will suffice when
general experience and common sense will enable a lay person fairly to
determine the causal nexus.  Weidner v. Sanchez, 14 S.W.3d 353, 370 (Tex. App.—Houston [14th
Dist.] 2000, no pet.).  

            Here, Dr. Lechin
testified in his deposition that there can be several causes of sinusitis and
asthma and that the diagnosis of their cause depends on the individual.  General experience and common sense do not
enable a fair understanding of causation under these circumstances;
accordingly, expert testimony is required. 
See Leitch
v. Hornsby, 935 S.W.2d 114, 119 (Tex. 1996)
(holding plaintiff must provide probative evidence through expert testimony
connecting injury to tortious act).  Praytor’s reliance
on Morgan, in which the supreme court
held that lay testimony sufficiently showed chemical fumes caused an injury, is
misplaced.  Lay testimony sufficed in Morgan because a default judgment left
no evidentiary dispute as to whether general experience and common sense could
allow a lay person to determine causation. 
675 S.W.2d at 733.  




Waiver of
Rule 702 Requirements

            Second, Praytor
contends Ford waived its complaint that her expert affidavits were inadmissible
by failing to obtain a ruling in the trial court.  In support of her waiver argument, Praytor relies on Rogers
v. Continental Airlines, Inc., 41 S.W.3d 196 (Tex. App.—Houston [14th
Dist.] 2001, no pet.) and Dolcefino v.
Randolph, 19 S.W.3d 906 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  In those
cases, we held that to preserve error with regard to admissibility of evidence,
a party must obtain a ruling from the trial court.  Rogers,
41 S.W.3d at 200; Dolcefino,
19 S.W.3d at 925.  Those cases, however,
involved an appealing party’s attempt to preserve error on the admissibility of
evidence.

            Here, Praytor
carried the burden to produce competent summary judgment evidence.  Consequently, her reliance on Dolcefino and Rogers
is misplaced.  See Weiss, 989 S.W.2d at 124, n.6. 
Ford, as the appellee, is not required to
preserve error for appeal.  Accordingly,
Ford did not waive its rule 702 challenge to Praytor’s
expert witness affidavits.  Finally, Praytor was notified of Ford’s intent to challenge the
qualifications and methodology of her experts when she received appellee’s motion for summary judgment.  The trial court, in holding that Praytor had failed to present “legally competent evidence,”
effectively concluded that the expert testimony was either inadmissible or
insufficient.  

Rule 702 Challenge in the No-Evidence Summary Judgment
Context

            Rule 702 contains three requirements
for the admission of expert testimony: 
(1) the witness must be qualified; (2) the proposed testimony must be
scientific knowledge; and (3) the testimony must assist the trier
of fact to understand the evidence or to determine a fact in issue.  E.I. du Pont de Nemours and Co., Inc., v. Robinson, 923
S.W.2d 549, 556 (Tex.
1995).  In order to constitute scientific
knowledge which will assist the trier of fact, the
proposed testimony must be relevant and reliable. Id.  

            The trial court must make the
preliminary decision regarding the expert’s 
qualifications under Rule 104(a). 
Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 718 (Tex.
1998).  In United Blood Services v. Longoria, 938 S.W.2d 29 (Tex. 1997), the
Texas Supreme Court required summary judgment proof of an expert’s
qualifications in support of the response to a motion for summary
judgment.  Id. at
30.  As a practical matter, this holding
means that a party relying on an expert should not wait until trial to develop
the expert’s qualifications.  The supreme
court specifically rejected the approach of waiting for trial.  Id. at 30 (“no
difference obtains between the standards for evidence that would be admissible
in a summary judgment proceeding and those applicable at a regular
trial.”).  The party offering the
expert’s testimony bears the burden to prove the witness is qualified under
rule 702.  Broders v. Heise, 924 S.W.2d 148, 151 (Tex.
1996).  The offering party must
demonstrate that the witness “possesses special knowledge as to the very matter
on which he proposes to give an opinion.” 
Gammill,
972 S.W.2d at 718.  As an appellate
court, we may not disturb a trial court’s determination that a witness is
unqualified as an expert unless a clear abuse of discretion is shown.  Id. at 718–19.  An
expert may testify on scientific, technical, or other specialized subjects if
the testimony would assist the fact finder in understanding the evidence or
determining a fact issue.  Tex. R. Evid. 702.     

            Praytor
offered affidavits from two experts, Dr. Alex Lechin
and Byron Bloch.  Dr. Lechin
is a medical doctor, board certified in pulmonary medicine.  In his affidavit, he states that he reviewed
medical literature concerning exposure to the chemicals released by air bag
deployment.  Lechin
admitted in his deposition that he is not an expert on asthma, the causes of
asthma, or whether deployment of an air bag can cause asthma.  Further, Lechin
does not purport to be an expert on the toxicity of chemicals released when an
air bag deploys.  Dr. Lechin’s
medical expertise is greater than that of the general population, but Praytor did not establish that his expertise on the issue
of cause in fact met the requisites of Rule 702.

            Similarly, there is sound basis for
the trial court to conclude that Byron Bloch is not qualified to render an
opinion on whether deployment of the air bag caused Praytor’s
respiratory symptoms.  Bloch stated, in
his affidavit, that he is an independent consultant on automotive safety design
and vehicle crashworthiness.  He has been
qualified and given testimony as an expert in matters pertaining to defective
automobiles.  Further, Bloch is familiar
with the air bag system that was in the automobile owned by Praytor.  Bloch, however, professes no knowledge of the
possible causes of respiratory illness.  

            We acknowledge the difficult
circumstance Praytor faces in fulfilling requirements
for presentation of expert testimony under rule 702.  However, we are constrained to render our
decision solely on the summary evidence presented in response to Ford’s
no-evidence motion for summary judgment. 
Accordingly, we hold the trial court did not abuse its discretion if it
found that Praytor’s experts were not qualified. 

            In addition to qualification of an
expert witness, rule 702 requires that the proposed testimony must be relevant
and reliable.  Robinson, 923 S.W.2d at 556. 
To be relevant, the proposed testimony must be sufficiently tied to the
facts of the case that it will aid the jury in resolving a factual dispute.  United States v. Downing, 753 F.2d 1224, 1242 (3d Cir.
1985).  Evidence that has no relationship
to any of the issues in the case is irrelevant and does not satisfy the
requirement that the testimony be of assistance to the jury.  3 Weinstein
& Berger, Weinstein’s Evidence, ¶ 702 (1994).

            In addition to the relevancy
requirement, the underlying scientific technique or principle must be
reliable.  Expert testimony that is not
grounded in methods and procedures acknowledged by scientists in the particular
field of study amount to no more than subjective belief or unsupported
speculation.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,
589–90, 113 S. Ct. 2786, 2795, 125 L.Ed.2d 469
(1993).  Unreliable evidence is of no
assistance to the trier of fact and is therefore
inadmissible under rule 702.  Robinson, 923 S.W.2d at 557.  Although noting that the facts the trial
court may consider in making its determination will differ in each case, the Robinson court offered the following as
a non-exclusive list of factors to be considered by the trial court:

1.         the extent to which the theory has been tested;

2.         the extent to which the technique relies on the expert’s
subjective interpretation;

3.         whether the theory has been subject to peer review;

4.         the technique’s potential rate of error;

5.         whether the underlying theory or technique has been
generally accepted as valid by the relevant scientific community; and

6.         the nonjudicial uses that have
been made of the theory or technique.

 

Robinson, 923 S.W.2d at 557.  Application of the Robinson factors is germane to evaluating whether the expert is a
hired gun or a person whose opinion in the courtroom will withstand the same
scrutiny that it would among his professional peers.  Gammill, 972
S.W.2d at 725.  Although these factors
may not apply in all cases, we cannot ignore them when scientific testimony
attempts to link a chemical exposure to a medical condition.  See Daubert, 509 U.S. at 593–95;
Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 705–06 (Tex. 1997). 

            With regard to whether a plaintiff’s
injury was caused by exposure to a particular substance, a plaintiff generally
must prove both that the substance is capable of causing a particular injury or
condition and that the substance in fact caused the plaintiff’s injury.  Havner, 953 S.W.2d at 705–06.  In the absence of direct evidence of
causation, the plaintiff can attempt to demonstrate that exposure to the
substance increases the risk of a particular injury.  Id. at
706.  Reliable evidence of this nature
can be produced through epidemiological studies.  Epidemiological studies examine existing
populations to attempt to determine if there is an association between a
disease or condition and a factor suspected of causing that disease or condition.  Havner, 953 S.W.2d at 715. 
Recognizing that epidemiological studies cannot establish the actual
cause of an individual’s injury or condition, courts have been willing to
recognize that epidemiological studies showing an increased risk may support a recovery.  Id.   Neither Dr. Lechin,
nor Mr. Bloch relied on data or peer reviewed studies that demonstrate the
effect of toxin emission on occupants of automobiles resulting from air bag
deployment.  Further, neither expert
relied on any particular theories that had been or could be tested.

            In his affidavit, Dr. Lechin averred that he was Praytor’s
treating physician.  After reviewing
medical literature concerning exposure to chemicals released in air bag
deployment, he determined that Praytor’s asthma and
sinusitis were caused by her exposure to chemicals released when the air bag
deployed. A treating physician’s assertion that a physical examination
confirmed causation should not be accepted at face value.  Havner,
953 S.W.2d at 714.  Reviewing the Robinson factors, Lechin
does not state whether his theory has been tested, subject to peer review, or
that his theory is generally accepted outside of the courtroom by the relevant
scientific community.  In his deposition,
Lechin states, while on call in the emergency room,
he treated two patients with similar symptoms following automobile accidents in
which an air bag deployed.  Lechin’s treatment of those two patients and Praytor does not qualify as a scientific study that meets
the statistical requirements of Havner or that can be tested or reviewed by Lechin’s peers.  Lechin states that he has relied on medical literature in
his diagnosis, but fails to explain what literature he read or whether the
literature consists of peer-reviewed studies, which would support his theory of
causation.  Finally, the potential rate
of error appears significant given Dr. Lechin’s
inability to rule out other possible causes of Praytor’s
illnesses.

            Praytor
claims she has produced evidence of causation by showing a temporal relationship
between her exposure to the toxic chemical and the onset of her symptoms.  For this proposition, appellant cites Westbury v. Gislaved
Gummi AB, 178 F.3d 257 (4th Cir. 1999); Zuchowicz v. United States, 140 F.3d 381 (2nd
Cir. 1998); and Kennedy v. Collagen Corp.,
161 F.3d 1226 (9th Cir. 1998).  In Westbury and Zuchowicz, the courts held that a reliable differential diagnosis provides a
valid foundation for an expert opinion.  Westbury, 178 F.3d at 264; Zuchowicz, 140
F.3d at 388.

            Differential diagnosis, or
differential etiology, is a standard scientific technique of identifying the
cause of a medical problem by eliminating the likely
causes until the most probable one is isolated.  See Baker v. Dalkon Shield Claimants Trust, 156 F.3d 248, 252–53 (1st Cir.1998). 
A reliable differential diagnosis typically, though not invariably, is
performed after physical examinations, the taking of medical histories, and the
review of clinical tests, including laboratory tests, and generally is
accomplished by determining the possible causes for the patient’s symptoms and
then eliminating each of these potential causes until reaching one that cannot
be ruled out or determining which of those that cannot be excluded is the most
likely.  Kannankeril v. Terminix Int’l,
Inc., 128 F.3d 802, 807 (3d Cir.1997).  This technique “has widespread
acceptance in the medical community, has been subject to peer review, and does
not frequently lead to incorrect results.”  Brown v.
Southeastern Penn. Transp. Auth. (In re Paoli R.R.
Yard PCB Litig.), 35 F.3d 717, 758 (3d Cir.1994).

            Praytor
also cites Kennedy v. Collagen Corp.,
161 F.3d 1226 (9th Cir. 1998) for the proposition that testimony of a temporal
relationship between exposure and onset of symptoms is reliable causation
evidence.  The court in Kennedy, however, relied not only on the
expert’s testimony of a temporal relationship, but stated the expert in that
case relied on “(1) peer-reviewed articles; (2) clinical trials and product
studies conducted by the defendant; (3) the Texas Department of Health’s
investigation; (4) his examination of Mrs. Kennedy; (5) Mrs. Kennedy’s medical
history; (6) Mrs. Kennedy’s medical laboratory tests; and (7) Mrs. Kennedy’s
medical reports.”  Kennedy, 161 F.3d at 1228. 

            Here, Dr. Lechin
did not rule out other potential causes for Praytor’s
illnesses, nor did he rely on peer-reviewed articles, clinical trials, health
department investigations, or appellant’s laboratory tests.  For the above stated reasons, we hold that
the trial court did not abuse its discretion if it concluded that Dr. Lechin’s testimony does not present reliable evidence of
causation.

            In his affidavit, Bloch stated that
the Ford air bag system “was unreasonably dangerous and was defective in that
there was a release of toxic materials, primarily sodium azide
and hydrazoic acid gas and sodium hydroxide, that
were the likely proximate cause of the respiratory injuries to Rachael Praytor.”  In forming
his opinion, Bloch relied on a description of the air bag system, the air bag
inflator process and chemicals, information provided by Ford, and the nature of
the injuries incurred by Praytor.  Bloch relied on a publication by the National
Research Council of the National Academy of Sciences, which stated:  “The acute toxicity of sodium azide is high. 
Symptoms of exposure include lowered blood pressure, headache, hypothermia,
and in the case of serious overexposure, convulsions and death.  Ingestion of 100 to 200 mg in humans may
result in headaches, respiratory distress, and diarrhea.”  

            Reviewing the Robinson factors, we find Bloch’s theory has not been tested, nor
subjected to peer review.  Further, there
is no indication that Bloch’s technique has been generally accepted as valid by
the relevant scientific community.  

            Praytor
contends Bloch’s opinion is reliable because there is no analytical gap in his
logic.  See Gammill, 972 S.W.2d at 726.  To the contrary, Bloch recites a study that
shows injuries may occur at exposure levels of 100 to 200 milligrams of sodium azide.  He then comes
to the conclusion that because Praytor exhibited
symptoms of respiratory illness 

 class=Section3>

following
an alleged exposure to less than .0006 milligrams of sodium azide,
the exposure caused her symptoms. 
Bloch’s conclusion is not supported by verifiable data.  Also, Dr. Lechin
did not provide evidence regarding the degree of exposure, which, in reasonable
medical probability would be injurious.

            Praytor
further contends Bloch’s opinion is reliable because it is based on a
physician’s opinion that chemicals from the air bag caused the symptoms.  In Bloch’s affidavit, there is a statement
from Dr. Bradford Patt, one of Praytor’s
treating physicians.  Dr. Patt stated that Praytor had been
healthy prior to the accident; however, she experienced severe blockage of her
sinuses after the accident.  Dr. Patt further stated:

It would be hard to know
whether an air bag exposure to chemicals would be the cause, or should I say
that it would be difficult to document this. 
However, in an otherwise healthy patient, which Rachael reportedly was
before this event, the most likely cause is an aspiration of some type into her
sinuses and lungs of the chemical at the time of the accident.

 

Dr. Patt’s opinion is similar to the opinion expressed by Dr. Lechin.  It is based
on temporal proximity of symptoms to the air bag explosion.  For the reasons mentioned above, we hold the
trial court did not abuse its discretion if it concluded that Dr. Patt’s opinion is not reliable.  

Conclusion

            We recognize that a no evidence
motion for summary judgment presents potential pitfalls for non-movants when the issue is reliability of expert testimony.
A non-movant responding to a no-evidence motion for
summary judgment may request a continuance of the summary judgment proceeding
in order to submit additional evidence. 
The non-movant may also request a Robinson-Daubert
hearing in order to overcome the reliability challenge. See Judge David Hittner & Lynne Liberato, Summary
Judgments in Texas, 34 Hous. L. Rev. 1303, 1348 (1998).  We do not have the benefit of a record
reflecting the basis for the trial court’s ruling on the qualifications and
methodology of Praytor’s experts prior to the summary
judgment hearing.  Consequently, we must
review admissibility of the experts’ opinions based solely on the summary
judgment evidence.

            Under this record, we hold that the
trial court did not abuse its discretion if it concluded that Praytor’s experts are not qualified and their opinions are
not reliable.  Because Praytor relied on evidence that is barred from
consideration by the rules of evidence, the trial court did not err in granting
summary judgment.  The judgment of the
trial court is affirmed.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and
Opinion filed December 12, 2002.

Panel consists of
Justices Edelman, Seymore, and Guzman.

Publish — Tex. R. App. P. 47.3(b).

 

 











[1]           Appellant later non-suited Charlie Thomas Ford, Inc.