Laura **ROBINSON**, Plaintiff,

v.

**G.D. SEARLE & COMPANY,** Defendant.

**No. C 01–4195 CW.**

United States District Court, N.D. California.

Aug. 7, 2003.

Brian Arthur Ripley, Ripley Law Corp., Walnut Creek, CA, for Plaintiff.

Diana L. Panian, Shook Hardy & Bacon LLP, Houston, TX, Harvey L. Kaplan, Shook Hardy & Bacon LLP, Kansas City, MO, Lorianne G. Conklin, Shook Hardy & Bacon LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Defendant G.D. Searle & Company has filed a motion pursuant to Rule 56, Federal Rules of Civil Procedure, for summary judgment on Plaintiff Laura Robinson's claims against it for injuries allegedly caused by the prescription drug Ambien. Plaintiff Laura Robinson opposes this motion. Pursuant to the Court's May 12, 2003 order, the parties also filed further briefing on the legal sufficiency of the testimony of Plaintiff's expert, Jed Black, M.D. The matter was heard on June 13, 2003. After considering all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Defendant's motion for summary judgment.

### BACKGROUND [1]

#### I. Procedural History

On August 16, 2001, Plaintiff filed a product liability suit against Defendant in Alameda County Superior Court for personal injuries allegedly caused by Defendant's prescription drug, Ambien. Specifically, Plaintiff alleges that Ambien is defective because it caused her to develop a severe sleep disorder, rendering her unable to sleep sufficient hours to function adequately. Plaintiff also alleges that she developed a tolerance to Ambien and suffered withdrawal symptoms when she stopped taking the drug. On November 9, 2001, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1332(a).

---

1. There is no material dispute between the parties as to the following facts.

In its opening brief in support of its motion for summary judgment, Defendant argued that Plaintiff failed to disclose expert witnesses by the date set in this Court's March 20, 2002 case management order and therefore could not establish that Defendant's Ambien product caused Plaintiff's injuries. In her opposition, Plaintiff responded that the failure to disclose expert witnesses was due to a misunderstanding regarding the scope of the parties' stipulation to extend the deadline for fact discovery. Plaintiff further explained that she plans only to call non-retained experts at trial, namely her treating physicians, including Dr. Jed Black of the Stanford Sleep Disorder Clinic. Plaintiff stated that she disclosed the identities of her treating physicians to Defendant in her February, 2002 initial disclosures. Because Dr. Black had been previously disclosed as a witness and because Defendant demonstrated no significant prejudice, the Court, in its May 12 order, stated that it was not inclined to grant summary judgment on the grounds raised in Defendant's motion.

However, in its reply brief, Defendant had raised new arguments regarding the legal sufficiency of Dr. Black's expert opinion evidence. Specifically, Defendant argued that Dr. Black's deposition testimony does not establish either general or specific causation regarding Plaintiff's alleged injuries as a matter of law and that the methodology employed by Dr. Black is not "reliable" as required under Rule 702, Federal Rules of Evidence. The Court granted the parties leave to file additional briefs on these issues, which were timely filed.

II. Plaintiff's Medical History and Ambien Use

Plaintiff has had a decades-long history of delayed sleep phase insomnia. Plaintiff testified at her deposition that she had taken a number of prescription medications to treat her insomnia over the years, prior to taking Ambien. She has also been prescribed a number of medications to treat anxiety and depression.

Plaintiff was first prescribed Ambien on July 26, 2000. She claims that Ambien caused her to develop a new sleep disorder, referred to as "rebound insomnia," involving an inability to sleep more than a few hours at a time and an inability to go back to sleep after awakening.

However, in a June 16, 1999 e-mail message to her treating neurologist, Dr. Joanna Cooper, Plaintiff had complained of "waking up after only a couple of hours of sleep every morning." Her e-mail stated that she "never used to be like this." In a July 15, 1999 e-mail message to Dr. Cooper, Plaintiff stated:

After taking restoril and waking up at 4 a.m., after at most only 4 hours of sleep, there's no way I'll ever take restoril again. Since April, I've been waking up every couple of hours, but generally still manage to eventually return back to sleep. But restoril actually wakes me up without ever letting me go back.

In a November 2, 2000 e-mail message to Dr. Cooper, Plaintiff stated:

I had to take a whole klonopin last night because a half didn't work. The whole pill did put me to sleep, however, like every other drug I've had since July, I was awake after 4–5 hours of sleep and could not return to sleep.... Since the summer, my delayed sleep problems have escalated to early morning wakings without abatement. That all started when I was on remeron and before I even began effexor, vistaril or ambien.

Dr. Black began treating Plaintiff on December 19, 2000. At his deposition, Dr. Black testified that Ambien is a "hypnotic" agent, meaning that it has an "effect on the GABA [γ-aminobutyric acid] system." Dr. Black stated that, prior to taking Am-

bien, Plaintiff "had steered clear of ... hypnotics in general and used them very sparingly." Instead, Dr. Black testified, Plaintiff used "sedating antidepressants and sedating agents." Contrasting sedative agents with hypnotic agents, Dr. Black explained that "sedatives are anything that caus[e] CNS [central nervous system] depression of any form."

At his deposition, Dr. Black drew a connection between Ambien and the sleep disorder that is the basis for Plaintiff's complaint:

> [Plaintiff] suffered for decades with delayed sleep syndrome but never experienced sleep fragmentation or sleep maintenance issues.... But when she started taking Ambien—I mean she started using it regularly and developed classic—sort of slept for four hours after dose. Then was wide awake and couldn't get back to sleep. And she never experienced that before.

Dr. Black noted that this phenomenon, "rebound insomnia," can be caused by hypnotic agents. Dr. Black concluded:

> Most likely scenario is that [Plaintiff] was experiencing the development of a rebound response or a tolerance to—or a combination of the two—to Ambien that she was taking on a regular basis. I mean this is sort of what—what I had communicated to her when I saw her and one of the reasons I told her, look, we're not going to use hypnotics in this course of treatment.

Dr. Black explained that Plaintiff was the source of his information regarding Plaintiff's medical history.

Plaintiff has submitted no declaration or other evidence to dispute or explain the substance of her e-mail messages to Dr. Cooper. Plaintiff does not dispute Defendant's contention that Dr. Black was unaware of these e-mail messages in forming his diagnosis and has submitted no supplemental declaration from Dr. Black regarding the messages.

A. Tolerance

In support of her allegations that she was injured by developing a tolerance [2] to Ambien and suffered withdrawal symptoms, Plaintiff cites excerpts from Dr. Black's deposition testimony and her verified response to Defendant's first set of interrogatories. The passage of Dr. Black's deposition transcript cited by Plaintiff reads as follows:

Q: What was causing that to continue, the sleep maintenance issue?

A: It's hard to know. I mean, it's something we see happen. As I mentioned before, I had a very strong sense that, based on her description of what had happened over the course from August through November until such time as she was hospitalized, that she had started taking—she never had previously taken a hypnotic on a regular basis. She had started taking a hypnotic on a fairly regular basis with Ambien. She was saying three to four nights per week. And she developed—she appeared to develop some acute rebound as well as some tolerance over time to the effect.

Went from a 5 milligram does up to on some nights a repeated 5 milligram dose. So 5 in the evening and 5 in the

---

**2.** At the hearing on Defendant's motion, Plaintiff's counsel argued that "tolerance" refers to addiction. *Stedman's Medical Dictionary* (26th Ed.1995) defines "tolerance" as follows:

1. The ability to endure or be less responsive to a stimulus, especially over a period of continued exposure. 2. The power of resisting the action of a poison or of taking a drug continuously or in large doses without injurious effects.

middle of the night, when she woke up and couldn't get back to sleep and then, ultimately, started experiencing some symptoms during the day which she thought would indicate some sort of withdrawal syndrome, headaches and stomach discomfort and so forth, and pursued a detoxification program.

The excerpt of her verified response to Defendant's eleventh interrogatory cited by Plaintiff states:

> Plaintiff saw Dr. Cooper on November 1, 2000, and updated the doctor on her decline. The doctor suggested that plaintiff [add] another drug to her daily intake, Provigil, to take in the morning to increase alertness. Plaintiff declined. During October, plaintiff's migraines and nausea had continued, and would on occasion be substituted by diarrhea, which was at least once bloody. Dr. Cooper stated she felt plaintiff's migraines and nausea were the result of lack of sleep and nothing else. Plaintiff advised the doctor that the migraines and nausea were daily, always between 3 and 8 p.m.

## DISCUSSION

### I. Legal Standards for Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other eviden-

tiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If the moving party shows an absence of evidence to support the nonmoving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).

Alternatively, a moving party that does not carry the burden of proof at trial may also carry its burden of production on summary judgment by producing evidence negating an essential element of the non-moving party's claim or defense. *See High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## II.  Defendant's Motion

Defendant argues that Dr. Black's opinion is not reliable, as required under Rule 702, and therefore his testimony is not admissible to prove that Ambien caused Plaintiff's alleged injuries.  Specifically, Defendant contends that Dr. Black's testimony is unreliable because his conclusions regarding Ambien as the cause of Plaintiff's alleged "rebound insomnia" are based on a faulty factual premise—namely, that Plaintiff had never experienced sleep fragmentation or sleep maintenance problems prior to taking Ambien.  That factual premise is contradicted by Plaintiff's e-mail messages to Dr. Cooper, which show that Plaintiff suffered sleep fragmentation and sleep maintenance problems as early as June, 1999, more than a year before she was first prescribed Ambien.

■■■ Defendant's objection to Dr. Black's opinion testimony on Rule 702 grounds is well-taken, but not on the basis of reliability.  The reliability requirement of Rule 702 goes to the reliability of the principles and methods used by the expert.  *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–3, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  However, Rule 702 also requires, for expert opinion testimony to be admissible, that the testimony be "based on sufficient facts or data."  In this case, a key factual premise on which Dr. Black's opinion was based is directly refuted by Plaintiff's admissions.  Plaintiff's citation to *Kennedy v. Collagen Corp.,* 161 F.3d 1226 (9th Cir.1998) is inapposite.  *Kennedy* addresses standards for evaluating "the reasoning used in forming an expert conclusion," not the sufficiency of factual basis for the expert's conclusion.  *Kennedy,* 161 F.3d at 1230.  The Court therefore concludes that Dr. Black's opinion testimony regarding rebound insomnia lacks sufficient factual basis as required under Rule 702 and is therefore inadmissible.  *See In re Citric Acid Litigation,* 191 F.3d 1090, 1102 ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993)).

■■■ The Court further concludes that Plaintiff has failed to produce sufficient evidence regarding her claim that she has been injured by developing a tolerance to Ambien and suffered withdrawal symptoms.  Plaintiff's interrogatory response does not support her allegations that Ambien caused her migraines and stomach discomfort.  To the contrary, according to Plaintiff's interrogatory response, Dr. Cooper concluded that those symptoms "were the result of lack of sleep and nothing else."  Dr. Black's testimony on which Plaintiff relies is merely a description of his conjecture that Ambien led to a tolerance effect and Plaintiff's conjecture that tolerance to Ambien caused her symptoms.  The mere existence of a scintilla of evidence in support of a plaintiff's position is not sufficient to preclude summary judgment.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As the moving party not bearing the burden of proof at trial, Defendant may carry its burden of production on summary judgment by showing that there is an absence of admissible evidence that Ambien caused Plaintiff's injuries.  Defendant has done so.  The burden thus shifted to Plaintiff to produce specific evidence that there is a material dispute of fact as to causation.  Plaintiff has failed to produce any such evidence.  Indeed, evidence tending to undermine causation is undisputed.  Because Plaintiff has failed to carry her bur-

den of production, Defendant's motion for summary judgment must be granted.[3]

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket No. 58) is GRANTED. Judgment shall enter accordingly. Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.

---

**3.** The Court having concluded that summary judgment is appropriate on this basis, Defendant's other arguments need not be considered.